FREUND et al. v. SABIN.

(Court of Civil Appeals of Texas. Galveston.
May 16, 1913. On Motion for Rehearing, June 13, 1913.)

1. TRESPASS TO TRY TITLE (§ 41*) — EXECUTION—EVIDENCE—SUFFICIENCY.

In trespass to try title, evidence *held* to sustain a finding that the person through whom plaintiff claimed had reconveyed the premises, by deed not found and not recorded, to one through whom defendant claimed.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

2. VENDOR AND PURCHASER (§ 230*) — BONA FIDE PURCHASER—NOTICE.

Where a purchaser knew before the purchase that a third person claimed to own the land, and the purchaser and his attorney examining the title had an abstract of title containing a deed reciting facts of conveyances and contracts supporting the claim of the third person, the purchaser was put on notice and he was not a purchaser in good faith.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. § 230.*]

Error to District Court, Harris County; Chas. E. Ashe, Judge.

Action by Alex Freund and another against L. S. Sabin. There was a judgment for defendant, and plaintiffs bring error. Affirmed.

G. H. Pendarvis and W. F. Tarver, both of Houston, for plaintiffs in error. E. P. & Otis K. Hamblen, of Houston, for defendant in error.

PLEASANTS, C. J. This is an action of trespass to try title brought by Alex Freund and H. M. Curtin against L. S. Sabin. The trial in the court below without a jury resulted in a judgment in favor of the defendant.

The land in controversy is six blocks in what is known as the Ryon addition to the city of Houston and is a part of the John Austin two-league grant. This original grant was square in shape; the lines of the grant being 7,080 varas in length and running with the cardinal points of the compass. The city of Houston was originally located upon the south half of the east half of the grant, and the north half of the east half, which includes the property in controversy, was subdivided at an early date into 80 blocks of four lots each; each lot containing seven acres with roads or streets between the blocks, the subdivision being known as Germantown. There is some uncertainty as to the exact location of these subdivisions, for the reason that the plat does not exactly fix the ground, being too wide east and west and too short north and south, but for the purposes of this case the location of the blocks, including the property in controversy, was fixed by agreement of counsel. Elizabeth Pierpont is common source of title. On October 24, 1838, she and her husband con-

veyed to W. N. Bronaugh the northeast one-fourth of said John Austin grant. Bronaugh made the Germantown subdivision above mentioned. On November 17, 1844, he reconveyed to Mrs. Pierpont the land theretofore conveyed to him by her, except certain designated lots and blocks in said subdivision aggregating 161 acres, which do not include the blocks in controversy. Thereafter Mrs. Pierpont conveyed certain portions of the land, not including that in controversy, and on March 2, 1848, she conveyed to her brother-in-law, Wm. T. Austin, all of her interest in the east half of said grant. Austin made conveyances of various portions of the land but none of such conveyances included the land in controversy. On May 25, 1854, Mrs. Pierpont conveyed to Wm. Ryon 328 acres of land, described as all of her interest in the north half of the east half of said grant. If the quantity of land sold by Mrs. Pierpont after the reconveyance to her by Bronaugh is added to the quantity sold by Wm. T. Austin after the conveyance to him, the balance remaining of the land reconveyed to Mrs. Pierpont by Bronaugh was approximately 328 acres, the quantity stated in her deed to Ryon.

On August 28, 1862, Wm. Ryon, Wm. T. Austin, and Horace Cone executed the following agreement: "This memorandum of agreement made and entered into this 28th day of August, A. D. 1862, by and between Col. Wm. Ryon, of Ft. Bend county, state of Texas, of the first part, and Wm. T. Austin and Horace Cone, of the county of Harris and said state, of the second part, witnesseth: That the said Wm. Ryon is the owner of a certain tract or parcel of three hundred and twenty-eight acres of land, being a part of the north half of the league of land, upon which the city of Houston is situated, he having purchased the same of Wm. Pierpont and Elizabeth E. Pierpont (his wife), late widow of John Austin, deceased, to whom the said tract of land was originally granted by the Mexican government as his headright. Now the said Wm. Ryon has this day contracted with Theodore Kosse to survey the three hundred and twenty-eight acres aforesaid, and to lay the entire tract off in town lots and blocks, corresponding with the surveys of the city of Houston. The said Wm. Ryon has likewise contracted and agreed with the said Wm. T. Austin and Horace Cone to act as his agents and attorneys in fact for him, the said Ryon, to superintend the said survey and the disposal of the said blocks and lots of land, to be sold and disposed of as soon as the said survey, plots, etc., are completed, for which personal services on the part of said Wm. T. Austin and the said Horace Cone, and in consideration of services already performed by the said Horace Cone, the said Wm. Ryon agrees to allow and award to the said Austin and the said Cone

each an equal and· undivided interest of one-fourth part of said tract of land, and· the proceeds arising from the sale thereof, the said Austin and the said Cone to pay each one-fourth of all expenses incident to making survey plots, etc., together with all and other expenses of every kind and description growing out of making sales and all other things thereunto appertaining, and the other half to be borne by the said Ryon after deducting which the net proceeds arising from the sales of said property are to be divided as follows: One-half to ·the said Ryon, one-fourth to the said Austin, and one-fourth to the said Cone, and the said Austin and the said Cone are to make no personal charge for their said services to be rendered. The said Ryon and the said Austin and Cone will confer together on the subject and manner of making sales of the said lots and blocks, and also as to the time of making such sales, and the said Ryon will, in all instances, make and execute titles to the purchasers. It is further understood that the said Wm. Ryon reserves and has the right and privilege of selecting from the said survey after it shall have been made, and before making sales, four blocks of lots for his own use and benefit, and no charge shall be made him for the same, and after the said four blocks shall have been selected by the said Ryon, the said Wm. T. Austin shall have the right to select four blocks for his own use and benefit, and no charge to be made him for the same, the said eight blocks to be taken from the whole survey. To all of which we bind ourselves, our heirs, executors, administrators and assigns. Signed in triplicate in the city of Houston, this 28th day of August, A. D. 1862. Wm. Ryon. Wm. T. Austin. Horace Cone." This agreement was filed for record December 22, 1906. The 328 acres was surveyed by Kosse in November, 1862, and platted in blocks and lots, with streets corresponding with the streets of the city of Houston. The survey so made and platted was designated Ryon's addition and a map of said addition was recorded in the deed records of Harris county on November 17, 1862.

On January 10, 1863, Wm. T. Austin conveyed to James M. Foster an undivided one-half of the interest held by him in the Ryon addition under the contract before set out. This deed is as follows: "Whereas William Ryon, Horace Cone and the said William T. Austin are the owners of a certain tract of three hundred and twenty-eight acres of land, being a part of the N. half of the league of land upon which the city of Houston is situated, by virtue of a purchase made by the said William Ryon of Wm. Pierpont and Elizabeth E. Pierpont, his wife, late widow of John Austin, deceased, to whom the said tract of land was originally granted by the Mexican government as his headright. And whereas, on the 28th day of August, A. D. 1862, the said Wm. Ryon, Horace Cone and

Wm. T. Austin made a contract with Theodore Kosse to make a survey of the said three hundred and twenty-eight acres of land aforesaid and to lay the entire tract off in town lots and blocks corresponding with the surveys of the city of Houston. The said Wm. Ryon has likewise contracted and agreed with the said Wm. T. Austin and Horace Cone to act as the agent and attorney in fact of him, the said Wm. Ryon, to superintend the said survey and disposition of the said blocks and lots of land to be sold and disposed of at an early day. The purchase money or consideration for which the said Wm. Ryon has sold and conveyed one-half of the said tract of three hundred and twenty-eight acres of land to the said Wm. T. Austin and Horace Cone, giving each one of them an equal undivided interest of one-half of said land, with the understanding that one-fourth part of the proceeds arising from the sale thereof shall belong to each one of them, each one to share the expense according to his interest in the premises. And now, therefore, I, the undersigned Wm. T. Austin, in consideration of $4,000.00 paid, sell, bargain and convey an equal undivided interest in his one-fourth interest in the above-described tract of land, together with an equal interest in the 4 blocks of lots which are especially set forth as belonging to him in the above-recited contract existing between the said Ryon, Cone and himself. Giving and conveying to the said James M. Foster an equal undivided interest in the interest held and owned by the said Austin in and to said tract of three hundred and twenty-eight acres of land. The said contract for division and sale of said property was made and executed in the city of Houston on the 28th day of August, 1862, and is made a part of this conveyance, with a view and in order to show the interest of said Foster in that agreement. To all of which I bind myself, my heirs, executors, administrators and assigns forever. [Signed] Wm. T. Austin." This deed was duly recorded in the deed records of Harris County on January 12, 1863.

From the trial judge's findings of fact filed at the request of plaintiffs in error we quote the following, which we find supported by the evidence, and adopt as our further fact conclusions:

"I find thereafter during the year 1863 Wm. Ryon sold one of said blocks and in 1866 he sold others of said blocks to Chas. S. Kelley. The blocks so sold to Kelley embraced the blocks now· in controversy. The land covered by said 328-acre survey made by Kosse, as well as by the map or plat of the subdivision he made called the Ryon addition, covered lands that had been sold previous to the deed made to Wm. Ryon by Mrs. Pierpont and husband excepting 84 acres, which 84 acres covered the blocks now in controversy.

"I find that Wm. T. Austin was residing in the city of Houston during the Civil War, and during the time of the agreement as made between him, Cone, and Austin, and during the time that Wm. Ryon made the conveyances including the deed to Kelley; that after that time he moved to Galveston where he resided until he died. The date of his death is not accurately known but it is agreed that he died some time prior to 1895.

"I find that Wm. T. Austin never set up any other claim to any of the land in the north half of said league after the deed from Mrs. Pierpont and husband to Wm. Ryon with one exception. On March 30, 1863, he made a deed to Wm. Powers for two certain tracts of land to perfect the title to said tracts of land that had been previously sold.

"I find that W. P. Hamblen acquired deeds of conveyance from the administrator of Kelley to the blocks now involved in this suit in 1870, being the same blocks conveyed to Kelley by Wm. Ryon, and that in 1871 he conveyed the same to Mary A. Sabin and her deed was duly placed of record, and that defendant in this cause is her son and only heir, and that he and his mother have paid the taxes on said property since 1877, perhaps omitting two years during the time, and have notoriously claimed the same.

"I find that about the year 1895 Elizabeth Austin, the widow of Wm. T. Austin, and her children sued various parties who were claiming different portions of 84 acres described as follows: Beginning at the middle N. E. corner of the 500-acre tract conveyed by Wm. T. Austin to James Scott by deed recorded in volume N, p. 361; thence north 112 rods; thence east 120 rods; thence south 112 rods; thence west 120 rods to the place of beginning—and judgment was rendered in favor of plaintiffs in January, 1900, but that neither the defendant herein nor his mother was a party to said suit.

"On the 28th day of March, 1905, Mrs. Austin having died, her children and heirs conveyed to the plaintiff, Alex Freund, all of their right, title, and interest in and to the following property: Beginning at the middle N. E. corner of the 500-acre tract conveyed by Wm. T. Austin to James Scott by deed recorded in volume N, p. 361; thence north 224 rods; thence east 120 rods; thence south 224 rods; thence west 120 rods—thus covering an area of 168 acres or twice the amount of their recovery in said suit. In said deed they also conveyed 11 blocks and 3 fractional blocks in addition thereto in Hamblen's extension of Ryon's addition; said deed containing the following stipulation: 'The grantors herein and hereby intending to convey to the grantee herein all and whatever right, title, and interest and estate is vested in the grantors and each of them in and to the above-described land and premises as the heirs at law of the said Elizabeth A. Austin, deceased, and said Wm. T. Austin under and by virtue of the decree of the district court of Harris county'—referring to the judgment rendered on January 11, 1900, and January 12, 1900, giving the books and pages, etc.; the first-named suit being the one in which they recovered the 84 acres. The warranty to said conveyance contains the following restrictions: 'Against all person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under us, but no further. Grantees assume payment of all taxes assessed against said land.'

"I find that at the time Alex Freund purchased he was furnished with an abstract of title which contained the deed from Pierpont and wife to Ryon, and also the deed hereinbefore referred to from Wm. T. Austin to Foster, and the deed from Horace Cone to Wm. T. Austin above referred to. It also contained the deed from Wm. Ryon to Kelley and the deed from Kelley, by his administrator, to W. P. Hamblen, and the deed from W. P. Hamblen to Mary Sabin, the mother of the defendant.

"I find that Henry Curtin furnished half of the money for said purchase with the understanding and agreement that he was to have half of the land and that Alex Freund made him a deed to an undivided one-half thereof. I find from Freund's evidence that at the time he took said deed from the heirs of Austin they were not certain as to the correct location of the 84 acres and for that reason they drew the deed running north from the starting point twice the distance that was necessary to make the 84 acres so that if it lay further north than the 84 acres described in the judgment by which the Austin heirs recovered the land that it would be covered by their conveyance. The lots or the land in controversy are embraced in the 84 acres described by beginning at the northeast corner of the Scott purchase and running north 112 rods, but would not be embraced in any land described in the deed lying north thereof. Freund had the title examined by Col. Burke, but was unable to produce the opinion given him by Col. Burke, but says that it was a favorable opinion and on the strength thereof he bought and I so find, but admitted that he knew that Sabin and other parties were also claiming land in the 84 acres. Freund and Curtin paid the consideration called for in said deed, to wit, $2,300. There was no evidence introduced tending to show the value of the property conveyed in the deed from the Austin heirs to Freund and therefore I am unable to find whether the price paid was an adequate consideration. No deed was offered in evidence from Wm. T. Austin conveying said land back to Mrs. Pierpont, and I find that there is no such deed on record, but from all of the evidence and circumstances, from the claim and assertion of title by Ryon and those holding under him and the long pay-

ment of taxes by Mrs. Sabin, defendant's mother, and by him since her death, and from the nonclaim by Wm. T. Austin during his lifetime and by his recognition in the agreement entered into between him and Wm. Ryon and Cone, that Wm. Ryon had acquired the title to said property by his purchase from Mrs. Pierpont and husband, I conclude as a fact that Wm. T. Austin had reconveyed the unsold portion of said land back to Mrs. Pierpont prior to the time she and her husband so conveyed it to Wm. Ryon."

[1] The first assignment of error complains of the trial court's finding that the evidence before set out sustains the fact conclusion that the land in controversy had been reconveyed by Wm. T. Austin to Mrs. Pierpont prior to the conveyance by her and her husband to Wm. Ryon.

We think the evidence fully justified, if it did not compel, the finding complained of. There is no reasonable explanation of the declarations and acts of Wm. T. Austin in reference to the title of Wm. Ryon to the land in controversy than that he had reconveyed to Mrs. Pierpont the title acquired by him by his deed from her. All of the parties are long since dead, and the true facts of the transaction between them can only be shown by circumstances. If the circumstances shown in this case by the undisputed evidence do not warrant the presumption that the title Wm. T. Austin had in the land passed from him to Mrs. Pierpont prior to her conveyance to Wm. Ryon, it is hard to conceive a case which would authorize such presumption. We have his written declarations, made shortly after the conveyance from Mrs. Pierpont to Ryon, that Ryon by such conveyance acquired title to the land. Not only this, but he actually acquired from Ryon an interest in the title held by him under Mrs. Pierpont and undertook to actively represent Ryon in the sale of the property which for such purpose had been subdivided into blocks and lots. He lived for a number of years in the neighborhood of this property and never asserted any claim to the property adverse to Ryon or did any act which could be construed as a revocation or repudiation of his former declaration that Ryon acquired title by his deed from Mrs. Pierpont. On the contrary, Ryon and those claiming under him have in the most unmistakable and active manner asserted claim and ownership of the property ever since it was conveyed to him by Mrs. Pierpont. Upon these facts, can there be any doubt that it is more reasonable to presume that the title passed from Austin back to Mrs. Pierpont than that no reconveyance was made by him? If this is the most reasonable conclusion to be drawn from the evidence, then the circumstances are sufficient to warrant the presumption that there was such reconveyance. Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736; Herndon v. Burnett, 21 Tex.

Civ. App. 25, 50 S. W. 582; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1036; Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1015; Pratte v. Townsend, 125 S. W. 114.

[2] The second assignment of error complains of the judgment on the ground that the trial court should have found that the plaintiffs were purchasers of the land in good faith, for a valuable consideration, and without any notice of the facts upon which the court based the finding that there had been a reconveyance by Wm. T. Austin to Mrs. Pierpont. The evidence is sufficient to charge plaintiff with notice of defendant's title at the time they purchased the land. It is shown by plaintiff Freund's testimony that he knew before he purchased the land that defendant claimed to own it. In addition to this, it was shown that he and his attorney who examined the title for plaintiff had an abstract of the title which contained the deed from Wm. T. Austin to Foster before set out, which recites the facts that the land was conveyed to Ryon by Mrs. Pierpont, and that the grantor had entered into a contract with Ryon and Horace Cone by which the land was to be surveyed and subdivided and Austin and Cone were to act as agents for Ryon in selling lots and blocks in said subdivision and had acquired from Ryon title to certain of said lots and would secure as compensation for their services an interest in the proceeds of the sales effected by them. This was notice to plaintiffs of the fact that Austin recognized the title of Ryon and was sufficient to put a prudent man upon inquiry, and, if any reasonable inquiry had been made, all of the facts tending to show the reconveyance from Austin to Mrs. Pierpont could have been ascertained.

Such being our fact conclusion upon the question of notice, it is immaterial whether the trial court was correct in holding that the deed to plaintiff was only a quitclaim deed and would not support the plea of innocent purchaser, and it is therefore unnecessary for us to pass upon the third assignment of error which assails this holding of the trial court.

What has been said disposes of the fourth and last assignment of error which in effect assails the judgment on the ground that it is not supported by the evidence.

We are of opinion that the judgment should be affirmed, and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

The third ground of the motion for rehearing filed by plaintiffs in error is as follows: "The court is clearly in error in so much of its finding as reads as follows: 'He (Austin) lived for a number of years in the neighborhood of this property and never asserted any claim to the property adverse to

Ryon or did any act which could be construed as a revocation or repudiation of his former declaration that Ryon acquired title by his deed from Mrs. Pierpont.' In making this statement the court has overlooked the fact that after the making of the contract, viz., on November 19, 1869, Wm. T. Austin, as attorney in fact for Willis R. Austin, conveyed to W. P. Hamblen about 250 acres of the 328 acres claimed by Ryon, which 250 acres Wm. T. Austin had conveyed to Willis R. Austin in 1849."

It is true that Wm. T. Austin, as attorney in fact for Willis R. Austin, did on November 19, 1869, convey to W. P. Hamblen a tract of land which he had conveyed to Willis R. Austin in 1849 during the time in which he held title from Mrs. Pierpont to all of the unsold portion of the east half of the grant, and that the land described in this conveyance included a large portion of the Ryon 328-acre subdivision as surveyed by Kosse. This deed does not, however, include any of the land in controversy in this suit. As stated in the main opinion, after deducting all of the land sold by Wm. T. Austin out of the east half of the grant there remained at the time the deed from Mrs. Pierpont to Wm. Ryon was executed approximately 328 acres. This deed did not describe the land thereby conveyed by metes and bounds but conveys all of the grantor's interest in the east half of the grant. We think it clear from these facts that, even if Wm. T. Austin knew at the time he, as attorney in fact for Willis R. Austin, executed the deed to W. P. Hamblen that the land thereby conveyed included a portion of the Wm. Ryon subdivision as surveyed and platted by Kosse, the execution of such deed could not be regarded as an assertion of title to the land in controversy, which was not included in said deed, nor to any portion of the east half of the grant which had not been sold prior to the execution of the deed from Mrs. Pierpont to Wm. Ryon.

We have carefully considered the motion for rehearing and are of opinion that it should be overruled, and it has been so ordered.