DAVIS et al. v. HOUSTON OIL CO. OF TEXAS.

(Court of Civil Appeals of Texas. Texarkana. Dec. 10, 1913. Rehearing Denied Jan. 8, 1914.)

1. APPEAL AND ERROR (§ 748*) — QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR — COMPLIANCE WITH RULES OF COURT.

The Courts of Civil Appeals deriving their power to review assignments of error from the statute may consider assignments of error failing to comply with the rules adopted by the Supreme Court, where the record shows that a palpable injustice has been committed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3058–3064; Dec. Dig. § 748.*]

2. TENANCY IN COMMON (§ 15*) — ADVERSE POSSESSION.

A cotenant entering into possession cannot, by mere occupancy, acquire title by adverse possession against another cotenant, but he must give notice of his adverse claim, and a secret intention to claim the entire title is insufficient.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

3. TENANCY IN COMMON (§ 15*) — ADVERSE POSSESSION.

Evidence *held* not to sustain a finding that a cotenant entering into possession acquired title by adverse possession against another cotenant.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

4. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In trespass to try title wherein a party claimed title through a tenant in common acquiring title by adverse possession and payment of taxes, an instruction that the mere fact that the tenant in common purchased the interests of some of the heirs and sought to purchase the interest of others was not, of itself, an admission of the title of the latter or that the possession of the former was not adverse, as he had the right to buy his peace without detriment to his limitation title, was objectionable as on the weight of the evidence; for the fact stated was for the jury as evidence of the absence of any hostile claim on the part of the tenant in common.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436,. 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

Appeal from District Court, Newton County; W. B. Powell, Judge.

Action by E. M. Davis and another against the Houston Oil Company of Texas. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

Holland & Holland, of Orange, for appellants. Hightower, Orgain & Butler, of Beaumont, for appellee.

HODGES, J. This is an action of trespass to try title to the Nancy Cooper survey of 640 acres of land, instituted by the appellants against the appellee in the district court of Newton county. It is the second appeal in this case; the former is reported in 132 S. W. 808. The case had been carried to the Court of Civil Appeals of the First Supreme Judicial District by the defendant, appellee in this appeal, and the judgment was reversed on grounds different from those here involved. The appellants claim title to the land in controversy as the heirs of the original grantee, Nancy Cooper. The appellee claims through one W. R. Fuller, and relies upon proof that W. R. Fuller had acquired a title by adverse possession and the payment of taxes for more than five years between 1880 and 1888. Fuller's adverse claim, according to the evidence offered by the appellee, began with a tax deed dated June 4, 1878. It appears from the record that practically the only issue involved in the last trial was the question of adverse possession and the payment of taxes for the period of time required to perfect Fuller's title by limitation under the five-years statute. It is conceded that the appellants are entitled to recover a part of the land at least in this suit, unless their title has been lost by the adverse possession of Fuller. A trial

in the court below resulted in a verdict and judgment in favor of the appellee.

[1] The first assignment of error charges that the verdict is contrary to the law and the evidence. Objection is made by the appellee to the consideration of this assignment, because it fails to refer to the motion for a new trial as required by the rules adopted by the Supreme Court. We have heretofore announced that it was the purpose of this court to follow the precedents set by several of the other Courts of Civil Appeals in refusing to consider assignments of error where the parties have failed to comply with the requirements prescribed in the rules. It is proper, however, to say in this connection that we do not feel inclined to permit the mere failure of attorneys in the preparation of their briefs to conform to the rules of practice to stand in the way of dispensing justice. Rules of procedure are generally to be construed as directory only. The Courts of Civil Appeals derive their power to consider assignments of error from the statute, not from the rules adopted by the Supreme Court. While an orderly system of briefing cases is an accomplishment which we, with all of the other Courts of Civil Appeals, are strongly inclined to encourage, yet we are not disposed to push that encouragement to such an extreme as would result in a miscarriage of justice. Without undertaking to outline any clear-cut system which we expect to follow in the future in the consideration of assignments presented in violation of the rules, we content ourselves with saying that we shall, in each particular instance, exercise such discretion as we may have, with a view to determining each particular case on its merits. However, we wish to impress upon the members of the bar the importance of conforming to the rules as they are laid down. There is little excuse for a failure to do this; otherwise we might be more lenient in overlooking such derelictions. The frequency with which objections to the consideration of assignments of error are made in cases submitted for our consideration shows that many of the attorneys are either unaware of the requirements of the present rules, or that they overlook them in the preparation of their briefs. We expect to deviate from the rule heretofore adopted only in those cases where the record shows that a palpable injustice has been committed in the judgment appealed from.

[2, 3] We do not believe that the verdict rendered in this case is the proper one which, under the evidence, should have been returned. If it were necessary to consider an assignment of error not properly presented in order to reverse this case, we should unhesitatingly overlook the failure to conform to the rule. W. R. Fuller himself never occupied the land. In 1880, according to the testimony, H. C. Fuller, a son of W. R. Fuller, moved on the land, built a house, and occupied the premises till about 1888 as the tenant of his father. During all of that time, it is asserted, W. R. Fuller claimed the land adversely to all other parties. H. C. Fuller in his testimony admits, however, that both he and his father were aware of the fact that the appellants and other heirs of Nancy Cooper claimed an interest in the property. His testimony as a whole strongly tends to show that the validity and justness of those claims were recognized by both him and his father during his alleged adverse occupancy. The record shows that Fuller's tax deed was dated the 4th day of June, 1878, and was filed for record July 8th of the same year. It is further shown that on the 19th day of June, 1878, before the recording of his tax deed, and on the 26th day of January, 1882, September 12, 1883, and November 23, 1878, W. R. Fuller acquired the interests of other parties in the land in controversy. Two of those conveyances are dated anterior to the time he claims that his adverse occupancy began. It follows, then, that when Fuller through his tenant entered into the possession of the premises he was a tenant in common with the remaining heirs of Nancy Cooper, and had the legal right to occupy the premises as such cotenant. The rules by which to determine whether or not he subsequently acquired a title by limitation are those which apply to controversies between tenants in common, where one is relying upon possession adverse to the others. In such cases the mere occupancy of the premises by one cotenant, although accompanied with a secret intention to claim the entire title, is not sufficient. Such hostile tenant must go further and fix upon his cotenants notice of his adverse claim. Moody v. Butler, 63 Tex. 210; Phillipson v. Flynn, 83 Tex. 582, 19 S. W. 136; Alexander v. Kennedy, 19 Tex. 488, 70 Am. Dec. 358; Scofield v. Douglass, 30 S. W. 818. And the burden rests upon him to show that he has done this if he wishes to establish a title by adverse occupancy. In Moody v. Butler, referred to above, the court had under consideration a question much like that here involved. Chief Justice Willie, in disposing of it, said: "When the appellees took possession of the land they did not by any overt act give notice that they intended to hold it in opposition to their cotenants in common. No secret intention on their part, nor intention expressed to third parties, but not brought home to the knowledge, or presumed knowledge, of Moody's heirs, could give the appellees the benefit of an adverse possession, or one hostile to their cotenants. The mere possession itself would be referred to that right which every tenant in common has to possibly settle upon and enjoy the occupation of the common property without ousting his cotenant. Hence such occupancy was not in itself sufficient to charge the appellants with notice that their interest in the land was disputed,

and that the benefit of the statute of limitation would be claimed by their cotenants if suit were not brought within time to prevent its bar." H. C. Fuller is the principal witness relied on in this case to show the facts upon which the appellee depends to establish a title by limitation. Without undertaking to reproduce his testimony in detail, we deem it proper merely to say that it is far from being satisfactory upon that issue. It shows that he went into possession as a tenant of W. R. Fuller in 1880, and remained on the land till 1888. As to the payment of taxes, he says: "After he [W. R. Fuller] commenced claiming that land, he paid his taxes regularly every year, I think. I know I paid mine every year, and I think my brother paid his. My father was a man that was usually prompt in paying his taxes. He was a good business man in matters of that sort—very particular about paying his taxes and his debts." This language at best is a weak attempt to discharge the burden which the law imposes upon one claiming title under the five-year statute. The extent to which the witness goes is merely to say that he *thought* his father had paid the taxes; that witness had paid his. In referring to his own taxes, he evidently meant taxes on that portion of the land consisting of 160 acres which his father afterwards deeded to him as compensation for his occupancy of the land in an effort to acquire for his father a title by limitation. As to the hostile claim of W. R. Fuller and its notoriety, the testimony is no stronger. H. C. Fuller practically admits that during his occupancy both he and his father recognized the fact that the appellants had an interest in the property, and that W. R. Fuller desired to purchase it. He states that some time during his occupancy, without indicating particularly when, he wrote to the appellant Davis concerning his interest and that of other heirs, and indicated a desire to purchase those interests for his father. He also testified that in 1895 he wrote another letter to Davis, in which he asked Davis to visit the premises and see if they could not arrange for an adjustment of their respective rights. We do not undertake to state literally what the contents of that communication were, but merely its substance. Nowhere does Fuller say that he gave notice to the appellants of any hostile holding by his father, or of any intent to deny them their right of joint possession of the premises. So far as this record discloses, the only evidence of an adverse claim which Fuller displayed was the recording of his tax deed in 1878.

[4] The court gave the following as a portion of his main charge: "The mere fact that H. C. Fuller purchased some of the heirs' interest in the land, and sought to buy the interests of others in the land, would not of itself be an admission of their title to the land or that his possession for his father was not adverse, as he would have the right to buy his peace without detriment to his limitation title." Appellants contend that this charge is on the weight of the evidence, and we think the contention is correct. It appears to be founded on the language used by Associate Justice Reese, of the Second judicial district, in disposing of the case on the former appeal. In discussing the contention of the appellant in that appeal, the appellee in this, that the evidence showed a perfect title in it by limitation, the court used the following language: "The fact that H. C. Fuller after getting his tax title bought out the interests or claims of certain of the Nancy Cooper heirs would not of itself prevent his possession from being adverse to them. He could buy his peace without admitting their title. But the testimony goes further than this in showing in the language of the witness that Fuller always recognized their claim during the time that he was undertaking to buy them all out." Appellee undertakes to justify the giving of that charge by saying that it is only a part of the general charge of the court and should not be considered without its appropriate connection with the other portions of the charge. It is true that this portion of the charge is separated from that which precedes and that which follows only by commas, but a reading of the entire context will show that it is an independent sentence, and is the enunciation of a distinct rule for the guidance of the jury. It is not qualified in any sense by that which precedes or that which follows. Appellee also insists that this is a correct enunciation of the law, and refers to the opinion of Associate Justice Reese as authorizing it. It will be observed, from a comparison of the language employed in the charge and that used by Justice Reese, that there is a material difference. In the opinion the justice said: "The fact that Fuller after getting his tax title bought out the interest or claims," etc., would not prevent his possession from being adverse to them. This charge says: "The mere fact that Fuller purchased some of the heirs' interest in the land *and sought to buy the interest of others in the land,*" etc., would not be an admission of their title to the land or that the possession of his father was not adverse. We may concede that the language employed by Justice Reese is the law; yet it was improper for the court to thus particularize that group of facts and undertake to tell the jury that they could not be considered as evidence against a hostile claim on the part of Fuller. In the excerpt from the opinion referred to the justice was merely saying that in the then condition of the record it could not be held as a matter of law that the transactions mentioned negatived the fact of an adverse holding on the part of Fuller. Evidently he did not intend to say that negotiations between

tenants in common, where one seeks to purchase the interest of another, do not under any circumstances carry with them a concession on the part of the prospective purchaser that the other has an interest which is to form the subject-matter of the purchase. Counsel for appellee in discussing another assignment of error use this language: "The fact of his [Fuller's] seeking to buy out some of the heirs and his in fact having purchased the interest of some of the heirs is an equivocal act. It might or might (not) show that Fuller's possession was held in recognition of the claim of the title of the heirs of Nancy Cooper, according as the jury would draw the inference of fact one way or the other from the entire testimony." This appears to be practically a concession that the jury had a right to consider those offers to purchase as evidence of the absence of any hostile claim on the part of Fuller. We think that counsel were correct in thus stating the nature of that testimony. We shall therefore use one portion of their argument to answer the other.

The objections urged in the third and fourth assignments of error are not tenable.

The fifth assignment complains of the action of the court in giving a special charge. We know of nothing in the record which called for the giving of this charge. The testimony referred to, having been admitted, could be considered by the jury for all legitimate purposes, and it was not of that character which required the court to place a limitation upon its consideration. While we do not think the charge contains any harmful error, it had no legitimate place in appropriate instructions to the jury under the facts of this case.

For the errors previously discussed, the judgment of the court is reversed, and the cause remanded.