## CHAPMAN v. DICKERSON et al.   (No. 535.)

(Court of Civil Appeals of Texas. Beaumont. May 25, 1920. Rehearing Denied June 23, 1920.)

**1. Adverse possession ⬤⟲60(3) — Claimant may buy his peace without recognizing title.**

One in possession of property under a claim of right thereto may attempt to buy his peace from adverse claimants without recognizing the title of adverse claimants or interrupting the period of limitations.

**2. Adverse possession ⬤⟲115(5) — Evidence held sufficient to raise issue that possession was not adverse.**

Evidence that the person in possession through whom defendant claimed under the statute of limitations had attempted unsuccessfully to purchase the interest of one heir of the original patentee, and had gone into possession with the understanding he was to set off the interest of that heir if he could purchase from the others, *held* to raise the issue whether his possession was adverse to the heirs.

**3. Adverse possession ⬤⟲116(5) — Instruction as to recognition of superior title held sufficient.**

An instruction that an attempt by the person in possession to buy the claim or interest of another in the land was not a recognition of the other's ownership *held* sufficient to cover the issue of the possessor's attempt to buy his peace.

**4. Adverse possession ⬤⟲60(4) — Possession under owner becomes adverse only by express repudiation with notice to owner.**

The possession with recognition of the rights of the owner becomes adverse only by an express repudiation of the rights of the owner which is brought to the owner's notice, or is so notorious and public as to require the owner to take notice.

**5. Adverse possession ⬤⟲60(3)—Recognition of claim of one heir defeats adverse holding as to others.**

Where there was evidence that the one on whose adverse possession defendant relied had recognized the title of one of the heirs of the patentee having a one-sixth interest, it was not error to refuse a directed verdict for defendant for the other five-sixths interest, since if the holding was not adverse to one heir it was not adverse to the others.

**6. Adverse possession ⬤⟲116(5)—Instruction defining "hostile" held correct.**

Instruction that by the term "hostile" is meant an occupancy of the premises under a holding by the possessor as owner and against all other claimants is not erroneous, as requiring a finding of possession hostile to others than plaintiffs.

**7. Evidence ⬤⟲229—Original affidavit that affiant purchased certificate is inadmissible against patentee's heirs.**

In trespass to try title by the heirs of the original patentee against those in possession,

an original affidavit by one of defendant's predecessors in title that the patentee had sold his headright certificate to affiant's grantee was an ex parte statement, not admissible against the heirs of patentee.

**8. Adverse possession ⟨©⟩116(8) — Evidence held to require instruction on presumption of sale of certificate.**

In trespass to try title, evidence that defendant's predecessor had been in possession under a deed and claim of ownership, and that the heirs of the original patentee had paid no taxes and claimed no ownership for more than 30 years, *held* to require an instruction as to the presumption of a sale from the original patentee.

**9. Adverse possession ⟨©⟩116(8)—Requested charge as to presumption of sale of land certificate held correct.**

A requested charge that, if jury found from all the facts and circumstances it was more reasonably probable that the patentee sold the certificate under which the land was located to the predecessor of defendant who was in possession than that he did not make such sale, it could find for defendant, and that prior to 1840 it was not necessary for a sale of the certificate to have been in writing, was correct.

Appeal from District Court, Newton County; W. T. Davis, Judge.

Trespass to try title by John Dickerson and others against J. R. Chapman. Judgment for the plaintiffs, and defendant appeals. Reversed and remanded for new trial.

Terry, Cavin & Mills, of Galveston, for appellant.

Wightman & Hancock, of Newton, and John Hancock, of Thurber, for appellees.

WALKER, J. This is an action in trespass to try title, involving the Jesse Dickerson labor of land in Newton county, Tex., instituted by the appellees against appellant. On the verdict of the jury judgment was rendered for appellees.

It was admitted on the trial that appellees are the heirs at law of Jesse Dickerson, and that Jesse Dickerson and his wife died prior to 1875. This suit was filed December 6, 1916. The land in question was patented to Jesse Dickerson on November 21, 1854, by virtue of certificate No. 146 issued by the board of land commissioners of Jasper county, upon which duplicate certificate No. 2989/3370 issued by the Commissioner of the General Land Office on August 19, 1853.

Appellant introduced the following chain of title: Deed fro u' William F. Tanner to Thomas Tanner, dated April 10, 1861, filed for record April 20, 1867; will of Thomas Tanner, dated September 3, 1859, probated November 25, 1862, by which Thomas Tanner devised all of his property to his wife, Charlotte Tanner; deed from Charlotte Tanner to James L. Tanner, dated February 1, 1867; recorded April 20, 1867; deed from James L. Tanner to R. J. Brailsford, dated February 8, 1879, recorded July 17, 1882; deed from R. J. Brailsford to B. F. Gunter, dated July 17, 1882, recorded same day; deed from B. F. Gunter and wife, Mrs. A. J. Gunter, to John H. Kirby, dated December 28, 1905, recorded January 20, 1906; deed from John H. Kirby to J. R. Chapman, dated July 3, 1909. Appellant also introduced:

"Certificate by the comptroller of public accounts of the state of Texas, showing the rendition of the Jesse Dickerson labor from 1846 down to and including the year 1916; showing that it was rendered for taxation for the year 1846 and 1847 by Wm. F. Tanner; 1848 to 1862, inclusive, by Thos. Tanner; from 1863 to 1866, inclusive, by Charlotte Tanner; in 1867, by N. J. Tanner; 1868 by J. L. Tanner; 1869, Wm. F. Tanner, by F. L. Tanner, agent; 1872, 1875, 1877, and 1878 by Wm. F. Tanner; 1880 to 1882, inclusive, by R. J. Brailsford; 1883 to 1905, inclusive, by B. F Gunter; 1906 to 1909, inclusive, by Jno. M. Horger, agent, for John H. Kirby; 1910 and 1911, by F. C. McReynolds, agent, for J. R. Chapman; 1912 to 1916, inclusive, by D. H. Johnson, for J. R. Chapman."

B. F. Gunter and wife paid the taxes on the land involved in this suit regularly as the same accrued from 1882 to 1905, inclusive. John H. Kirby paid the taxes regularly as the same accrued from 1906 to 1909, inclusive. J. R. Chapman paid the taxes on the land regularly as the same accrued from 1909 to 1919, when the case was tried. It is agreed "that the plaintiffs have not paid any taxes on the land in controversy, nor occupied, used, or enjoyed the same." Under the possession of B. F. Gunter, which began in 1885 and ended in 1897, appellant clearly established title under both the 5 and 10 year statutes of limitation, unless such possession was not adverse under the following testimony offered by appellees:

Abe Davis, one of the appellees, testified:

"My name is A. D., Abe Davis. I am a brother to the gentleman that has just testified. My father's name was James Davis and my mother's name was Margaret. Jesse Dickerson was the father of Margaret, my mother. That is the Jesse Dickerson to whom the Jesse Dickerson labor was patented in this county. Jesse Dickerson and his wife are dead. I knew Mr. B. F. Gunter during his lifetime. I was with him a heap before he was married. After he came over here, I wasn't with him much. I was with him a heap for several years when he was a young man. We went sparking and everywhere else together. I was well acquainted with him. He has been to my father's house with reference to this Jesse Dickerson labor. The purpose of this trip was to buy my mother's interest in this land on Caney creek. I heard the conversation between him and my father. My father and mother did not sell to him. They told him they had no land to sell. I was at home when Mr. Gunter came there.

My father and mother claimed to own an interest in the Jesse Dickerson labor. They knew the land had never been disposed of. As to where Mr. Gunter left there to go, will say, I suppose he came back this way. My father told him if he could buy the other heirs' part, to run off his in one corner, and he would take charge of it."

He was corroborated in all points by his brothers, Jim and William Davis.

Only two issues were submitted to the jury. Question No. 1 was as follows:

"Was the cultivation, use, and enjoyment of the land in controversy by B. F. Gunter adverse, as that term is hereinafter defined, to the plaintiffs?"

—to which the jury answered "No." On conclusion of the evidence, appellant moved for an instructed verdict in his behalf, and also duly excepted to the submission of this issue, on the ground that under the uncontroverted evidence the Gunters had perfected title under both the 5 and 10 year statutes of limitation. One of the propositions under this assignment is:

"It being undisputed and admitted that B. F. Gunter, under whom appellant claims, had a valid limitation title under the statutes of 5 and 10 year, unless such title was defeated by the negotiations between him and Mr. Davis, testified to by some of the appellees, and the evidence as to such negotiations showing no recognition of the Davis title, but at most a mere attempt on Gunter's part to 'buy his peace,' and the law giving a limitation claimant such right, the court erred in submitting the first special issue to the jury."

[1] The right to "buy his peace" is clearly given a limitation claimant under the holding in Houston Oil Co. v. Davis, 62 Tex. Civ. App. 658, 132 S. W. 808, Davis v. Houston Oil Co., 162 S. W. 913, and Houston Oil Co. v. Davis, 181 S. W. 851. In their brief, appellees concede that these decisions announce the correct rule, for they say:

"If the jury believed from all of the evidence if Gunter was merely offering to 'buy his peace,' and did not thereby recognize the title of the true owner, then as a matter of law limitation ran in his favor; but if, on the other hand, the jury believed that by such an offer Gunter recognized the superior right and title of the owner, then as a matter of law limitation did not run in his favor."

[2, 3] The testimony as quoted above is sufficient to raise an issue of fact against the adverse holding of the Gunters. Appellant's rights under this issue were fully protected by the following special charge, given at the instance of appellant:

"In connection with special issue No. 1, submitted to you in the court's main charge, you are charged that as a matter of law the mere offer of B. F. Gunter to buy the claim of Mrs. Davis to the land, or her interest in the land, if you find any such offer was made, would not be a recognition by him of her ownership in the land; and, if you find from the evidence that said B. F. Gunter only offered to buy her claim or interest, you will answer special issue No. 1 'Yes.'"

As this case is to be reversed under another assignment, we will not discuss the action of the trial court in refusing to set aside the verdict of the jury on this issue. It may be that appellees will be able to strengthen their case on another trial.

[4] If Gunter, in his conversations with old man Davis, recognized the interest of the Dickerson heirs in this land, his holding could not become adverse to them except by an express repudiation on his part of their rights. Of this appellees must have had actual notice, or the acts of ownership and dominion by Gunter must have been so notorious and hostile in their character as to require appellees to take notice of the nature and extent of his claim. Before Gunter saw old man Davis and his wife he was holding the land under a recorded deed, and was duly paying the taxes. According to the testimony of Mrs. Gunter, before 1888, the last time given for any conversation or understanding between Davis and Gunter, they had already cleared five or six acres of land and built a house thereon. During the remaining years of his occupancy, it is not shown that he materially increased his actual inclosures, or did any other act beyond what he had been doing before 1888. We do not think that, as a matter of law, these facts are sufficient to show an adverse holding under the 5-year statute. As the evidence raised an issue of fact against the claim of appellant, no error is shown, under the assignment complaining of the court's refusal to instruct a verdict based on the occupancy from 1888 to 1897.

[5, 6] Appellant was not entitled to an instructed verdict for the undivided five-sixths interest in the land owned by the heirs other the Davis heirs. If the holding of Gunter was not adverse to the Davis interest, it was not adverse to the interest of the other heirs. Nor did the court err in charging the jury:

"You are instructed that by the term 'hostile' is meant an occupancy of the premises under a holding by the possessor as owner, and therefore against all other claimants of the land."

This charge is clearly distinguishable from the one contained in Whitaker v. Thayer, 38 Tex. Civ. App. 537, 86 S. W. 364. In that case the charge on limitation contained the following words:

"Commenced and continued under a claim of right inconsistent with and hostile to the claim of all others, and especially the plaintiffs here."

In discussing that charge, the court said:

"The jury having found that plaintiffs had the title, there was no one else that had or appeared to have any interest or claim to the land."

In this case the jury were required to find only that the holding was adverse to the other claimants of the land.

[7] The original affidavit made by W. F. Tanner in 1887, to the effect that Jesse Dickerson had sold his headright certificate to Thomas Tanner in 1839, was not admissible. This was an ex parte statement, with which the appellees had no connection. Cooke v. Washington, 2 Posey Unrep. Cas. 402–404; Houston v. Blythe, 60 Tex. 506; Peterson v. Ankrom, 25 W. Va. 56; Patterson v. Ins. Co., 3 Har. & J. (Md.) 71, 5 Am. Dec. 419, 1 R. C. L. p. 766, § 9.

[8] Question No. 2 submitted to the jury was:

"Do you believe from the evidence before you that Jesse Dickerson ever transferred and conveyed the land in controversy, or the certificate under which the same was granted, to William F. Tanner?"

—to which the jury answered "No." In this connection the court did not submit any instructions to the jury to guide them in answering this question. The issue of presumption of a deed out of Jesse Dickerson was clearly raised by this record. Jesse Dickerson and his heirs at law are shown to have been acquainted with this land. Some of them had lived in Newton county, some lived in Jasper county. The Davis children were all acquainted with Gunter. None of the appellees ever paid any taxes on this land, nor is it shown that they or their ancestors ever occupied, used, or enjoyed it. As said by Abe Davis:

"Neither myself nor my father and mother ever paid a cent's worth of taxes on this land. We sat by and let it be occupied for over 30 years now. As to whether or not we let it be transferred from one person to another, will say we didn't pay any attention to it, you know."

As contradicting the Davis' testimony, Mrs. Gunter testified:

"Mr. Gunter and I were married before 1885. I was married to him in 1879. I do not know of Mr. Gunter making a trip over to see Mr. and Mrs. Davis in Jasper county along about 1885 to attempt to buy their interest in this Dickerson labor. If he ever went and attempted to buy their interest, I have no knowledge of it. I do not know of him making such a trip about the year 1887 or 1888. If he ever went over in Jasper county to buy their interest, I have no knowledge of it. He was claim-

223 S.W.—21

ing to own this Dickerson land all the time from the time he got the deed from Mr. Brailsford up to the time that he sold the land to Mr. Kirby. He claimed that he owned it. He paid taxes on it all the while."

James R. Lee, E. L. Hayden, and Pierce Windham testified that they had known Mr. Gunter during all the years of his occupancy of the Jesse Dickerson, lived close to him, and that Mr. Gunter during all these years claimed to own this land, and did not recognize, so far as they knew, the interest of any other person in it.

Under this testimony, it was clearly an issue of fact as to whether Gunter ever tried to buy the Davis interest. Again, the record shows in 1905 Gunter sold the oak timber on this land to B. Kobler. From 1882 appellant and those under whom he holds have rendered and paid the taxes on this land every year. Those under whom appellant holds have rendered the land for taxes since 1845.

In Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963, Chief Justice Stayton said:

"In cases in which the evidence justifies it, the court may instruct that from facts in evidence, if believed by the jury to be true, they may or not presume the existence of another fact, if in their judgments this be authorized from a careful consideration of all the evidence before them."

[9] In connection with this special issue, appellant asked the court to give in charge the following:

"In determining your answer to special issue No. 2 submitted to you in the court's main charge, you will consider and weigh all the relevant facts and circumstances, and in so doing if you find therefrom that it is more reasonably probable that Jesse Dickerson sold the certificate under which the land in controversy was located to Wm. F. Tanner, or conveyed the land in controversy to him, than that he did not make such a sale or convey said land, you will answer such questions 'Yes'; and, if you are further charged that prior to the 23d day of April, 1840, it was not necessary for such a sale of the certificate to have been in writing in order for it to be valid."

We believe this special charge was called for by the evidence in this case, and, as we construe the decisions of our courts, the language of this charge on this issue has been expressly approved. Herndon v. Burnett, 21 Tex. Civ. App. 25, 50 S. W. 581; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736; Freund v. Sabin, 159 S. W. 168, and cases therein cited.

For the error of the court in refusing to give this special charge, this cause is reversed and remanded for a new trial.